Verl A. Brantner v. Ocwen Loan Servicing LLC, case number 21-35686. And each side will have 15 minutes. May it please the court, my name is Bill Pearson and I am here on behalf of the estate of Brantner. I would like to reserve, if I might, three minutes for rebuttal. You may. Thank you. I'd like to start out by making the overarching observation that we believe one of the fundamental flaws with the district court's order granting defendant Ocwen's motion for summary judgment is that the district court on countless occasions made findings of fact, drew inferences in favor of Ocwen instead of the estate, and made arguments on behalf of Ocwen that Ocwen itself had not presented in this motion for summary judgment. The order reads more like findings of fact and conclusions of law at the conclusion of a bench trial rather than an order on summary judgment. And we believe that countless bases utilized by the court were an improper means of ruling on a motion for summary judgment. The first question I'd like to address is whether or not the estate has stated a cause of action under the Real Estate Settlement Procedures Act. The district court stated that it had not. The estate believes that it has, and the primary reason for that is RESPA is codified at 12 U.S.C. Section 2605, and that's commonly referred to as Section 6 of RESPA. Dodd-Frank, in 2010, amended Section 6 of RESPA, and in doing so, it added Section K-1E, and that is the primary basis for the estate's argument that it has a cause of action under RESPA. As soon as the Dodd-Frank Act amended Section 6 of RESPA, RESPA had inside of it, or already had in Subsection F, a private cause of action. So once Congress amended Section 6 of RESPA, regardless of what the Consumer Finance Protection Board ultimately did, it did not have the ability to abrogate the pre-existing right under Section 6 for a private litigant who claimed Section 6 had been violated to bring a private cause of action. Mr. Pearson, can I ask, is it your argument that any regulation promulgated by the agency, by the CFPB, is associated with a private right of action, whether or not the agency wants there to be a private right of action? Specifically, K-1E states that if the Consumer Finance Protection Board imposes an obligation that it finds to be appropriate to carry out a consumer protection purpose, then that violation is actionable under Section 6, under K-1E, and would be actionable by a private litigant. In this particular instance, the servicing final rule and the policy and procedure rule were specifically found to carry out consumer protection purposes. So the board itself found that these two rules on which the state's cause of action is based carried out a consumer protection purpose. They were violated. That would violate Section K-1E. But presumably the agency, all its regulations, would be in the service of carrying out consumer protection purposes. So in effect, your argument is Congress intended for any regulation that's issued by the CFPB to be self-enforcing by a private right of action, even if the agency does not deem it wise to do so as it did here in its final rule. Am I getting that right? That's absolutely correct, Your Honor, because that's the only way that you can harmonize Section K-1E with Section F, both Section F of Section, I'm sorry, Subsection F of Section 6. Section 6 of RESPA comes with a private right of action if Section 6 is violated. The Dodd-Frank Act amended Section 6 to add on to it K-1E. If K-1E is violated, and that would include any regulation passed by the Consumer Finance Protection Board, the private litigant would have a cause of action under Section 6F, and that is the only way to enforce Section 6. Has any court endorsed this point of view? There were 13 decisions cited by the district court. Only two of them address the interaction between K-1E and Section F. The Giuseppe v. Bank of America case came the closest, and it said basically when a private party seeks to enforce a regulation an agency promulgates pursuant to a statute that does not contain an express cause of action, then the private litigant does not have a private right of action. But in this instance, the statute is Section 6 of RESPA, and Section 6, prior to its amendment by the Dodd-Frank Act, came with a private right of action in Section F. Can I ask a question about the procedural history of this case because it's a little convoluted? This case went to our court previously, is that correct? Yes, it did. And that was on the question of the on the basis of a jury verdict in your favor with respect to the state law causes of action, is that correct? That's correct. The RESPA claims did not go to the jury, right? No, they were as pled in the original complaint. They were dismissed approximately a week before trial began. And so how did they get back in? Well, upon remand, the estate moved to amend its original complaint. That amendment was not opposed by Auckland, the defendant, and so it was allowed in and we proceeded to court. Even though it had previously been dismissed by the manner, the allegations were different from what were originally stated in the original complaint. Oh, okay. And the state law claims were not repled? Well, they were repled specifically to make it clear that the Consumer Loan Act cause of action was proceeding in accordance with subsection D of RCW 31.04.290. The original appeal before this court dealt with, I believe it was sections B, C, and E. But subsection D was not part of the first trial. It was not presented for trial. So when the case was remanded, the second amended complaint was repled to have subsection 1B as the basis for the Consumer Loan Act as opposed to the other three that had been invalidated by this court on the first appeal. And so how does D differ from the other three materially? Well, the best way to put it is that subsection B is much more expansive than the other provisions. It specifically states that it applies to any request for information or any request for a modification, which is much more expansive than the other sections contained in subsection 1. Okay, so you pled that, but there was no remand. Is that correct? There was no further evidence other than what had already been adduced at the first trial, as well as what was introduced in opposition to Auckland's motion for summary judgment. Mr. Pearson, as I understand it, the fire took place in March of 2014, but there was a year delay before the insurer was made aware of that fire. Why didn't the estate file a claim or notify the insurer during that year? Well, ultimately, the estate did. But why the year delay? Well, the estate, three months after the fire, wrote a letter to Auckland asking or basically stating that the estate presumed that Auckland had filed the claim and wanted to know the status of what the claim was. The nature, it's very important for this court to understand that what was actually being insured by the insurance policy at issue is the outstanding balance on the loan. In other words, the house that burned down was not worth being insured. Personal property inside of it was not what was being insured. No additional living expense that might have been a consequence of the fire was being insured. What was being insured was the outstanding balance of the loan. Right, but nonetheless, I guess, so to go back to my question, I understand some of the allegations are that Auckland didn't move with due haste in order to file that insurance claim. I'm wondering why the estate didn't reach out to the insurance company itself to file a claim or let them know about this fire? Well, ultimately, it did in roughly a year after the fire, but that was after attempting on two specific occasions to find out from Auckland what the status, if Auckland had filed a claim and what the status was. And when the estate's attorney couldn't get an answer on either of those occasions, the estate's attorney then finally went ahead and filed the claim himself. And he did so on the same day that the vendor for Auckland finally decided to file a claim as well. I think that, and I see my time is limited, so I'll try and summarize as quickly as possible. We believe that under the evidence presented, the estate has made a cognizable claim under the Consumer Loan Act. The Consumer Loan Act does allow for a private right of action, contrary to what Auckland argues, and that's an express provision in section 3104208. We think the legislative history behind that provision makes it clear that it afforded specifically a private right of action. With respect to the Consumer Protection Act claim, I think what's most important is the fact that in ruling in favor of Auckland with respect to the public interest prong of a Washington CPA action, the district court completely forgot about the import of RCW 19.86.093, which defines, it supplements the Hangman Ridge test and was specifically utilized by the district court in the first trial to be the basis for the jury instruction, which was given to the jury. Court implicitly found that at the first trial enough evidence had been presented to warrant that instruction. The jury ruled in favor of the estate on that point, and the district court itself awarded the estate punitive damages on the express finding that- Sorry, your time has expired, so if you could wrap up. Thank you. That the specific test in RCW 19.86.093 had been met, and there's no mention of that statute in the order granting the present motion for sum of judgment, which we believe is a manifest error of law. Okay, thank you. Your honors, Heather Wright for the defendant Eppley, Auckland Loan Servicing. Mommy, she's not on the screen. There we go. Thank you. Can you see me now? We can, Ms. Wright. You may start again, please. Yes, thank you, your honors. Heather Wright for the defendant Eppley, Auckland Loan Servicing. First, I will address two of the points that the court raised in questioning to Mr. Pearson specifically on the rest of the claim, and then again on the elements of the Consumer Loan Act claim, or which specific section of the Consumer Loan Act claim is at issue. First, with respect to section 2605 K1E, which Mr. Pearson has argued contains the private right of action, I think it's important to focus specifically on the language of the statute, which unambiguously states that there is a private right of action where a mortgage servicer, quote, fails to comply with any other obligation found by the agency, the CFPB, by regulation to be appropriate to carry out the consumer protection purposes. So in this case, Congress has specifically delegated to the CFPB to determine by regulation which obligations of mortgage servicers should be enforced through a private right of action. And in this case, as we have set forth in our briefing, the CFPB specifically determined that the particular rule that the plaintiff is attempting to assert as a rest of a claim, the rule regarding successors and interest and policies and procedures designed to communicate with successors and interest, the CFPB has specifically determined that that rule should not be enforceable through a private right of action and should instead be enforceable only through the actions of the CFPB. It is also important to note that the district court did not simply determine that there was no private right of action for the plaintiff to proceed under the this particular rule, the successor and interest rule. The district court also held that even if there was a private right of action for the plaintiff to proceed under this district, under this rule, that the plaintiff had not identified any policies or procedures of Auckland that would have failed the requirements of the rule to determine reasonable procedures for a mortgage servicer to identify successors and interest. Secondly, with respect to the Consumer Loan Act claim, as council stated, the prior litigation or the the first iteration of the case on appeal involves sections B, C, and E of RCW 3104-290. The Ninth Circuit held on the original panel on the first appeal held that none of those specific sections of the CLA would apply to the facts of this case, which are a situation involving the receipt of insurance proceeds, the application of insurance proceeds to a loan. Now the plaintiff is arguing that section D should apply, which requires that the servicer make reasonable attempts to comply with a borrower's request for information about the residential mortgage loan account and to respond to any dispute initiated by the borrower about the loan account. What the district court held properly is that section D does not apply to the communications that were identified by the plaintiff in this case, specifically the communications from Council for the Estate inquiring of Auckland whether or not they had received insurance proceeds and asking about whether or not those proceeds had been applied to the loan. Furthermore, even if those communications were the type of communication that would trigger subsection D of the Consumer Loan Act, putting aside whether there is a private right of action to proceed under the Consumer Loan Act or whether those provisions are enforceable only through the Consumer Protection Act as part of the public interest analysis, the communications that were initially sent to Auckland inquiring about insurance proceeds were responded to by Auckland with the initial response being, we need to determine that you are the proper individual to communicate with us on behalf of the estate. And then it wasn't until about six or seven months after Auckland sent that request that the plaintiff was subsequently or the representative of the estate was subsequently appointed to represent the estate. And then once that letter's testamentary were provided to Auckland so that we understood that we could communicate with Mrs. Brayton on behalf of the estate and also with her lawyer, that we began the discussions with them about the loss and the insurance claim and the insurance proceeds. Counsel, would you address what is your view is the impact of, oops, you're kind of flashing off and on there. Oh. Would you address the impact of our prior, this court's prior decision on the case as it exists now? Yes, Your Honor. Was the receding of the subsection D claim, does that make a difference? Your Honor, it makes a difference only in that the prior decision of this court did not specifically address subsection D. So the law of the case with respect to the current posture of the case involves B, C, and E. However, an additional finding of the court was that if you take away the Consumer Loan Act claims as satisfying the public interest element of a Consumer Protection Act claim, the court held that in the prior appeal held that the plaintiff had not presented any evidence of a public interest outside the limited Consumer Loan Act claims that would constitute a per se satisfaction of those elements. On remand, there has been no evidence to support that public interest element. That public interest element applies to section D as well? Your Honor, what would happen is that section D, if it were established, could satisfy the per se element of the Consumer Protection Act claim and thus could satisfy the public interest element. If you have that section D of the Consumer Loan Act satisfying the public interest element, there is no evidence of public interest and so the CPA claim would necessarily fall, which is what happened on the first appeal. Okay, so why does it fall now under subsection D? Because subsection D, as the of the factual elements of the case of sending in a letter asking about what happened, it is not an error letter saying you have made a mistake with my account. I need you to provide me a detailed analysis of the way payments were applied or not applied. It was simply a letter that was sent to We assume that you have received insurance proceeds and we want to pay off the balance of the loan. And Your Honor, that gets to what I think is the fundamental fallacy really of the plaintiff's theory of the case, which is an assumption at the very beginning of the estate's engagement of counsel that there were insurance proceeds that would have paid off the loan. And as we have set forth in our briefing and as counsel has acknowledged in his briefing, this is a property insurance policy. It is designed to ensure the improvements on the property. The loan itself is secured by the improvement, but also the raw land and the raw land is not something that is covered by property insurance. So when there is an insured loss, as there was here, and a claim is made, the insurer goes out, the insurer determines what is it going to take monetarily to repair or replace the damaged improvement because that's what the insurance covers. They come back with an amount that it will take. They then apply the insurer, which was not Auckland, applies the loss settlement provisions of the policy and says, this is how much money is owed under the policy. They provide that money to Auckland. That is a contractual relationship with respect to the insurance policy. And then there is a separate contractual relationship in the deed of trust where the mortgage servicer, upon receipt of the insurance proceeds, looks to the language of the deed of trust and says, we have these insurance proceeds. What is it that we need to do with the proceeds? Are we going to apply them to the loan or are we going to apply them in conjunction with the borrower to the repair and replacement of the property? Initially, in the communications with the estate, Auckland was informed, we want to pay off the loan. So we said, okay, this is the amount of money that it will take to pay off the loan. At that time, when the proceeds were received, it was around $186,000 to pay off the loan. So we said the difference, if we take the proceeds, apply them to the loan in accordance with the deed of trust, which is to pass due payments, escrow amounts, it's set forth specifically in the language of the deed of trust. So we were working with the estate and said, this is the difference. These proceeds are not enough to pay off the loan. And if it is determined that the proceeds are not going to be used to repair the property, then there are effectively two options under the deed of trust. Number one is that those proceeds can be applied to the deed of trust to reinstate the loan, meaning we'll make the past due payments. And then according to the order of payments in the deed of trust, you would make, you would bring it current, and then you would apply as a principal pay down, and then we will determine what amount is left over on the loan. And then that amount will continue to be due as it was initially, where there are monthly payments that are due every month. Miss Wright, could I switch? I'm sorry to interrupt. I just wanted to grab your attention about a different issue while we have a little time. It's about the award of costs. Yes, your honor. As I understand it, Ocwen moved for an award of costs in the neighborhood of $6,000 or so. Right. But the clerk awarded costs in the range of $22,000 or almost $23,000. Is there anything, and as I understand it, there's no explanation for this award. It seems like the award was that were actually sought by your client and not this seemingly erroneous award amount. Your honor, our position is not that we are entitled to the $28,000 cost award. Our position was solely that if the plaintiffs wanted to appeal that cost award, they did not follow the correct procedural steps. To the extent of whether we would challenge the court remanding for the reentry of a proper cost award, we would not object to the entry of that. We are not arguing that we are entitled to what we also believe was numerically an erroneous entry. Thank you. Thank you. Unless the court has further questions, I would simply ask that the court affirm the ruling of the district court in favor of Aquinlon servicing. Thank you very much. Thank you. Okay, Mr. Pearson, you have the last word. Thank you, your honor. I would go back and with respect to the facts that were presented by Aquinlon, I think that it's very apparent that a whole bunch of factual determinations were made by the court below, which should have been made by the jury and not the district court. And as a result, the motion should have been denied on the basis that there were numerous questions of fact to determine whether or not there were violations of either RESPA, the Consumer Loan Act, or the CTA. With respect to what the facts were before the court, that the court utilized to make its decision, the wording of subsection B, RCW 31.04.290, states that Aquinlon must make reasonable attempts to comply with a borrower's request for information about a residential mortgage loan account and to respond to any dispute initiated by the borrower about the loan account. In response to a letter of inquiry in June of 2014 by the estate's attorney, Aquinlon responded on July 1, didn't provide any of that information, instead wanted an authorization from the estate signed by all borrowers to the original note, which was absolutely impossible because the original borrower on the note was dead. That fact alone violated the Consumer Loan Act, the Consumer Protection Act, the jury at the first trial held as such. What didn't it refer to the estate on that form and wasn't it easily recognizable as an error, a simple mistake in form? I mean, are you suggesting that that somehow was a delaying tactic? When there were five preconditions to the authorization requested by Aquinlon, one of those preconditions was that it be signed by all of the borrowers on the note. Did the attorney for the estate then pick up the phone and say, is this a mistake? I mean, Aquinlon rejected, the attorney submitted the authorization signed by the sole heir and it was rejected by Aquinlon on the grounds that it was not signed by one of the original borrowers on the note. There was no basis at that point for the estate to argue anything other than the submission of the authorization and Aquinlon had rejected it on the ground so that it was not signed by the original borrower who was dead. And he was the only person on the note. Is that right? That's correct. Okay. Thank you, Mr. Pearson. Your time has expired. Thank you, counsel, for our arguments. This matter will stand submitted.
judges: SCHROEDER, SANCHEZ, Antoon